PNC BANK, NATIONAL
ASSOCIATION,
Appellee

v.

BLUESTREAM TECHNOLOGY,
INC., Appellant.

Superior Court of Pennsylvania.

Argued April 14, 2010.
Filed Nov. 23, 2010.
Reargument Denied Jan. 11, 2011.

John Jacko, Philadelphia, for appellant.

Marc J. Zucker, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J., BOWES, J., and McEWEN, P.J.E.

OPINION BY BOWES, J.:

Bluestream Technology, Inc., appeals from the order entered on September 10,

2009, denying its petition to strike and/or open a confessed judgment and to dismiss or stay the proceedings. After careful review, we reverse and remand for proceedings consistent with this opinion.

The trial court recited the relevant facts as follows.

In December, 2007, Shimon and Hinda Petegorsky retained Michael Lefkowitz to facilitate their purchase of Bluestream Technologies LLC ("BTLLC"), a telephone equipment resale business. Lefkowitz, an agent for PNC Bank ("PNC") assured the Petegorskys that he would assist them in obtaining financing through PNC for their purchase.

Lefkowitz informed the Petegorskys they would not qualify for financing through PNC until they formed a corporation. Consequently, the Petegorskys formed [Bluestream Technology, Inc. "Bluestream"], obtained a loan for 1.8 million dollars from PNC, and purchased BTLLC on March 17, 2008.

Soon after, and due to advances in new technology, the consumer need for Bluestream's telephone equipment rapidly declined, the Petegorskys' newly acquired business failed, and Bluestream defaulted on its loan with PNC. On October 22, 2008, the Petegorskys and Bluestream filed an Amended Complaint against several Defendants, including PNC. That Amended Complaint included Counts against PNC for Rescission, Fraud, and Violation of the Equal Credit Opportunity Act–Regulation B. The Petegorskys and Bluestream also sought an Injunction against PNC for collecting under the terms of its loan to Bluestream.

The Petegorskys and Bluestream alleged PNC was aware that BTLLC's purchase price was inflated, and that PNC made materially false and misleading statements regarding BTLLC to the Petegorskys through Lefkowitz. On May 20, 2009, PNC confessed judgment against Bluestream in the sum of $2,057,660.45. . . .

Trial Court Opinion, 11/13/09, at 1–2.

Thereafter, Appellant filed a petition to open or strike the confessed judgment, which the trial court denied on September 10, 2009. Appellant timely appealed and the trial court issued a Pa.R.A.P. 1925(b) order directing Appellant to file a concise statement of errors complained of on appeal. Appellant complied and the trial court authored a 1925(a) opinion. Appellant raises the following issues for our review.

A. Are confession of judgment proceedings properly dismissed or stayed where a prior action by the alleged debtor against the creditor and others has withstood preliminary objections, asserts the same rights, and seeks the same remedies?

B. Is a judgment entered by confession properly stricken where it relies on two distinct, materially disparate instruments but includes only a single itemization with no allocation of the amount allegedly due between the distinct instruments?

C. Is a confessed judgment for money properly opened where the alleged debtor has promptly raised meritorious defenses and produced sufficient evidence of those defenses to raise questions for a jury by incorporating its affirmative claims against the creditor in a prior action?

Appellant's brief at 3.

Appellant's first issue is whether the confession of judgment should have been dismissed or stayed based on *lis pendens*, since it filed a prior action against

Appellee which asserted the same rights and sought the same remedies as this case, and the prior action withstood preliminary objections. Pursuant to the doctrine of *lis pendens,* dismissal of a later cause of action may be appropriate when the same parties are involved, the same rights are asserted, and identical relief is sought in each action. *Crutchfield v. Eaton Corp.,* 806 A.2d 1259, 1262 (Pa.Super.2002). Additionally, an abeyance may be appropriate even where the petitioner cannot strictly meet the above-referenced test if the two actions would "create a duplication of effort on the part of the parties and waste judicial resources by requiring two courts of common pleas to litigate a matter that in all likelihood could be fully addressed in one forum." *Norristown Automobile Co., Inc. v. Hand,* 386 Pa.Super. 269, 562 A.2d 902, 905 (1989).

 Appellee counters that dismissal or stay of a confessed judgment is inappropriate because a judgment already has been entered. In leveling its argument, Appellee points out that there are "only two methods of attacking a judgment: by petition to open or petition to strike." Appellee's brief at 9 citing Pa.R.C.P. 2959 and *Magee v. J.G. Wentworth & Company,* 761 A.2d 159 (Pa.Super.2000). Accordingly, Appellee posits that this Court need only determine whether the trial court erred in denying Appellant's petition to open or strike the confessed judgment.

We review a trial court's order denying a petition to strike a confessed judgment to determine whether the record is sufficient to sustain the judgment. *First Union National Bank v. Portside Refrigerated Services, Inc.,* 827 A.2d 1224, 1227 (Pa.Super.2003). A petition to strike a judgment may be granted only if a fatal defect or irregularity appears on the face of the record. *Id.* Similarly, we review the order denying

Appellant's petition to open the confessed judgment for an abuse of discretion. *Id.; PNC Bank v. Kerr,* 802 A.2d 634, 638 (Pa.Super.2002) ("A petition to open judgment is an appeal to the equitable powers of the court. As such, it is committed to the sound discretion of the hearing court and will not be disturbed absent a manifest abuse of discretion."). *ESB Bank v. McDade,* 2010 PA Super 144, at *2, 2 A.3d 1236. However, the question of whether *lis pendens* is an appropriate defense "is purely a question of law determinable from an inspection of the pleadings." *Davis Cookie Co., Inc. v. Wasley,* 389 Pa.Super. 112, 566 A.2d 870, 874 (1989), quoting *Hessenbruch v. Markle,* 194 Pa. 581, 45 A. 669, 671 (1900); *see also Crutchfield, supra.*

 The initial inquiries herein are whether *lis pendens* can support a petition to open or strike a judgment and if Appellant meets the requirements of the doctrine of *lis pendens.* We acknowledge that the defense of *lis pendens* is ordinarily raised as a preliminary objection; however, preliminary objections are inapplicable to a confession of judgment action. A petition to open or strike is the only method of challenging a confessed judgment. Pa.R.C.P. 2959; *Magee, supra.* While we have not discovered any Pennsylvania case law relative to the precise issue of whether *lis pendens* can be used to strike or open a confessed judgment, we note that to strike a judgment, there must be an error or fatal defect on the record. *ESB Bank, supra.* Herein, Appellant's *lis pendens* argument does not indicate a fatal defect or irregularity on the face of the record. Accordingly, we find it is inapplicable to striking the judgment.

 To open a judgment, a party must allege a meritorious defense. *RAIT Partnership, LP v. E Pointe Properties I, Ltd.,* 957 A.2d 1275, 1277 (Pa.Super.2008).

The doctrine of *lis pendens* could present a meritorious defense and give rise to the possibility that a trial court should open a confessed judgment. Hence, we proceed to examine Appellant's position in light of the applicable standard for opening a confessed judgment.

> [A] petition to open rests within the discretion of the trial court, and may be granted if the petitioner (1) acts promptly, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury. *Atlantic National Trust, LLC v. Stivala Investments, Inc.*, 922 A.2d 919, 923 (Pa.Super.2007), *appeal denied*, 594 Pa. 702, 936 A.2d 39 (2007).

*Id.* We are cognizant that because the doctrine of *lis pendens* is a question of law, it does not require submission to a jury; thus, our ordinary standard of review is ill-fitting in this context. Accordingly, we review *de novo* whether *lis pendens* operates as a meritorious defense herein.

■■■■■ Appellee does not challenge the timeliness of Appellant's petition; therefore, the question currently before this Court is whether Appellant can establish the applicability of *lis pendens*. In order to determine if Appellant presented a meritorious defense based on the doctrine of *lis pendens*, we examine if "both suits involved the same parties (acting in the same legal capacity), the same causes of action (with due regard for the common law distinctions between contract, trespass, and equity actions), the same rights asserted, and the same relief requested." *Davis Cookie Co., supra* at 874 (citations omitted); *see also Rostock v. Anzalone*, 904 A.2d 943 (Pa.Super.2006); *Crutchfield, supra*.[1] We first decide whether the same parties are involved.

Appellant avers that it filed an action against Appellee and others prior to this case in which it argued that Appellee did not have the right to collect on the loans at issue in the case *sub judice*. According to Appellant, although the role of the parties was reversed in the pending action, it was the plaintiff in the prior action and is the defendant herein, the rights asserted and the relief sought by the parties is identical.

Appellee counters that the doctrine of *lis pendens* is "designed 'to protect a defendant from having to defend several suits on the same cause of action at the same time.'" Appellee's brief at 9 quoting *Crutchfield, supra* at 1262. Instantly, as mentioned *supra*, Appellant is a defendant in this action and a plaintiff in the prior case. Consequently, Appellee submits that the elements that must be satisfied to dismiss a later action due to a prior pending matter are not present. Moreover, according to Appellee, Appellant is arguing that Appellee must have set forth its entitlement to recover under the loans via a counterclaim. Appellee contends that counterclaims are permissive under Pennsylvania law and that the law permits Appellee to assert its own separate action in the proper forum of its choice.

Insofar as Appellee maintains that it was not required to file a counterclaim, we agree. As this Court stated in *Davis Cookie Co., supra*, "[d]espite the apparent waste of judicial resources and unnecessary expense to the parties," the doctrine of *lis pendens* does not supersede Pennsylvania's rules of civil procedure, which did not require the filing of a counterclaim in the prior pending action at issue. *Id.* at 873, 876–877. Nevertheless, relative to the parties' contention regarding the identity of the parties, we note that although this Court has previously stated that the distinction between being a plaintiff and a

---

1. Appellee does not challenge on appeal whether there is a prior pending action.

defendant in the respective cases is material and that the parties must be acting in the same legal capacity, *Id.* at 874 n. 4, our Supreme Court has applied the doctrine of *lis pendens* to the situation where one party is a plaintiff in one action and a defendant in another. *See Herzog v. Witco Chemical Corp.,* 447 Pa. 202, 290 A.2d 256 (1972). Indeed, the seminal decision reached by our Supreme Court in *Hessenbruch, supra,* which defined the doctrine of *lis pendens,* provided, "Although not the same plaintiffs and defendants, the same persons are embraced in both bills. We may, therefore, with perhaps some liberality of construction, assume that the parties are the same." *Id.* at 671; *see also Penn Bank v. Hopkins,* 111 Pa. 328, 2 A. 83, 86 (1886). Thus, we do not find the fact that Appellant is the plaintiff in its prior action and the defendant herein dispositive of the identity of party issue. Since both parties in this case are parties to the prior pending action, we conclude that Appellant has established that aspect of the doctrine of *lis pendens.* Next, we analyze if the same causes of action are present in both matters.

▮ Appellant does not acknowledge the requirement that the causes of action be the same; rather, it opines that the rights asserted must be identical and not the cases. *See* Appellant's brief at 11; Appellant's reply brief at 4. In support of that position, Appellant cites *Taylor v. Humble Oil & Refining Co.,* 225 Pa.Super. 177, 311 A.2d 324 (1973). However, *Taylor* quoted from *Hessenbruch, supra,* stating, "A plea of former suit pending must allege that the case is the same, the parties are the same and the rights asserted

and the relief prayed for the same[.]" *Id.* at 325 quoting *Hessenbruch* at 671. Thus, the case/cause of action/controversy must be the same.[2] Of course, there is considerable overlap in analyzing whether the controversy is the same and if the rights and relief sought in both actions are identical. Indeed, in deciding whether the controversy in each case is the same, one is ordinarily required to examine the nature of the relief sought and the rights asserted by the parties. Therefore, we examine these issues together.

It is well settled that this Court will decline

to dismiss causes of action under the doctrine of *lis pendens* in cases where the later cause of action derived from the same contract or events that formed the basis of the prior action but the right asserted and/or the relief sought in the two actions were not the same. *See Virginia Mansions Condominium Association v. Lampl, supra (lis pendens* not available where counterclaim in second suit and claim in prior cause of action derive from same factual events but cases involve different causes of action and request different relief); *Penox Technologies v. Foster Medical Corp., supra* [376 Pa.Super. 450, 546 A.2d 114 (1988) ] (*lis pendens* not available to a defendant in a breach of contract action who had previously commenced an action for declaratory judgment to determine whether a breach of contract action on the same contract could be maintained); *Glazer v. Cambridge Industries, Inc.,* 281 Pa.Super. 621, 422 A.2d 642 (1980) (*lis pendens* not available where all suits based on same facts and

---

**2.** Strictly speaking, a case cannot be identical where the parties' roles as plaintiff and defendant are reversed. As mentioned *infra,* however, this distinction does not render *lis pendens* inapplicable. The crucial inquiry

relative to whether the case is the same is whether the controversy is identical. *See Hessenbruch v. Markle,* 194 Pa. 581, 45 A. 669, 671 (1900).

underlying shareholders agreement but earlier actions only sought equitable relief and later action is for damages in assumpsit); *Kramer v. Kramer,* 260 Pa.Super. 332, 394 A.2d 577 [ (1978) ] (*lis pendens* not available where both actions were based on the same contract but first suit was in assumpsit for damages and later suit was an equitable action to rescind the contract); *Raw v. Lehnert,* 238 Pa.Super. 324, 357 A.2d 574 (1976) (*lis pendens* not available where two actions arise from same subject matter but first suit is in equity and second in assumpsit for damages).

*Norristown, supra* at 904–905.

Appellant's position is that in the instant case, Appellee sought a judgment for money owed on two separate loans, which Appellant contends it does not owe due to fraud and misrepresentation. Similarly, in the prior pending matter, Appellant requested either that the court enjoin Appellee from collecting on those loans and/or the loans be rescinded due to fraud and misrepresentation. In sum, Appellant submits that the right to collect on the loans is at issue in both matters.

Appellee maintains that the two proceedings involve two different transactions; namely, the PNC loan transaction relevant herein, and a "broader series of transactions arising out of [Appellant's] purchase of a business from an LLC." Appellee's brief at 11. Accordingly, Appellee argues that the two cases involve two different transactions and that the prior action is larger in scope and asserts additional rights than the current matter.

We begin by acknowledging that more parties are involved in the prior pending case, thereby implicating Appellant's rights as to those parties. However, the rights maintained by Appellant in this case, *i.e.,* the avoidance of payment on two loans, are subsumed by those rights asserted against Appellee in the prior case. Therefore, while some additional rights are at issue in the prior pending matter, all of Appellant's rights in the case *sub judice* were implicated in the prior pending case.[3] Nevertheless, Appellee's rights in each case differ since it is declaring a right to collect in the current matter, but was not asserting a right to collect in the prior action. Further, the right to relief in each case as to Appellee diverge.

In the prior pending action, Appellant requested rescission of the loans at issue or an injunction barring Appellee from collecting under the terms of those loans, as well as rescission of its purchase of Bluestream Technologies LLC,[4] and a judgment in the amount of the purchase price of Bluestream Technologies LLC. In addition, Appellant sought compensatory damages and punitive damages relative to the purchase of Bluestream Technologies LLC, damages for emotional distress, and a declaratory judgment declaring that Hinda Petegorsky's signature on certain documents was invalid. Accordingly, Appellant's prior action sounded in both law and equity.

**3.** A distinction, must of course, be made between when the rights at issue in the subsequent case are greater than those present in the prior pending action. There are no grounds for dismissal in such a scenario since the rights of the parties in the later action cannot be the same as those in the prior case. *See Virginia Mansions Condominium Association v. Lampl,* 380 Pa.Super. 452, 552 A.2d 275 (1988). However, where the prior matter includes all of the rights at issue in the later case, it can be said that the issues in the second case duplicate those asserted in the first action.

**4.** Appellant, Bluestream Technology, Inc., is a separate entity from Bluestream Technologies LLC.

In the present case, pursuant to the terms and conditions of two loan documents, Appellee asserts that it is entitled to the principal and interest on the two loans, as well as late fees, attorneys' fees and collection costs. Appellee is not seeking monetary damages for the alleged breach of contract, but seeks specific performance under the loan agreements it entered into with Appellant; *i.e.*, payment of amounts owed pursuant to the contractual provisions pertaining to confessed judgment. Specific performance is an equitable action, as is the decision to open a confessed judgment. *Gall v. Crawford*, 982 A.2d 541 (Pa.Super.2009) (stating that specific performance is an equitable remedy); *Crum v. F.L. Shaffer Co.*, 693 A.2d 984 (Pa.Super.1997) (providing that a decision to open confessed judgment involves the court's equitable powers).

Additionally, Appellant's underlying defenses in this case are that the loan agreements were entered into fraudulently and/or due to misrepresentation and should be rescinded, or an injunction issued preventing Appellee from collecting pursuant to those loans. Both rescission of a contract and injunctive relief are equitable remedies. Thus, both actions sound in equity, although the first case also incorporates actions at law. This situation is distinct from cases where both actions involve the same contract but one action is solely for damages and the other case seeks equitable relief. *See Kramer, supra; Raw, supra, Glazer, supra.*

However, Appellee is seeking different relief in this case than it is in the prior action since it has not filed a counterclaim in the prior pending matter. Simply put, Appellee sought relief in the nature of performance under the loan in the current case, but did not attempt to secure payment on the loans in the prior action. We are cognizant that if Appellant is successful in the initial action, that it would also prevail herein because the trial court in the previous case would either rescind the loans or issue an injunction barring enforcement of those loans. Nevertheless, the relief that Appellee could receive in the two actions is distinct since it would not be entitled to enforcement of the loans in the prior action unless it filed a counterclaim. Hence, the relief applicable to Appellee is not identical in both matters.[5] Therefore, we find that, based upon the strict test of *lis pendens*, Appellant has not established that the relief in each case is reciprocal and Appellant is not entitled to the opening of the judgment on that basis.

However, where the *lis pendens* identity test "is not strictly met but the action involves a set of circumstances where the litigation of two suits would create a duplication of effort on the part of the parties, waste judicial resources and 'create the unseemly spectacle of a race to judgment,' the trial court may stay the later-filed action." *Crutchfield, supra* at 1262 (citation omitted). Accordingly, Appellant argues in the alternative that the trial court erred in refusing to open the judgment and stay the case. Although this Court in *Crutchfield, supra* and *Norristown, supra*, opined that a stay is appropriate where the doctrine of *lis pendens* is not strictly met, there exists a dearth of case law discussing whether refusal to hold a matter in abeyance is an abuse of discretion.

---

5. We remain cognizant that in the ordinary situation where one party is the defendant in both cases, a court must determine only whether the applicable rights and relief being sought are the same as to one party. However, where the roles of the parties are reversed, it becomes necessary to determine if the rights and relief being argued are congruent with both parties' positions.

Appellant reasons that opening the judgment and issuing a stay would be appropriate in the case *sub judice* since judicial and litigant resources are being wasted and that the "overarching question of the enforceability of a single set of agreements, relating to a single business acquisition transaction" is common to both this action and the prior pending matter. Appellant's brief at 13–14. Appellee responds that "[n]o duplication of effort or 'race to judgment' will occur as between the two matters" because judgment was already entered in its favor. Appellee's brief at 12.

■ We find Appellee's argument unavailing under the facts of this case. First, if Appellant were to succeed in the prior action against Appellee, then Appellee would no longer be entitled to enforce the confessed judgment. Second, by enforcing the confessed judgment, Appellee will be collecting on loans that are the subject of litigation in the prior action. Permitting Appellee to confess judgment herein, rather than opening the judgment and staying the action pending the outcome of the prior case, is a waste of valuable judicial resources. Moreover, we conclude that Appellant is entitled to the judgment being opened based on its final claim raised on appeal. In that issue, Appellant asserts that the trial court erred in not opening the confessed judgment since it promptly raised meritorious defenses and produced sufficient evidence of those defenses to raise questions for a jury by incorporating its affirmative claims against Appellee from the prior pending action.

Appellant maintains that by attaching a copy of the verified amended complaint from the prior pending action, it supplied the requisite evidence to present a question to a jury. According to Appellant, that complaint alleges that the loan documents, which are the subject of this confessed judgment action, were the result of fraud and/or material misrepresentations. Appellee replies that Appellant failed to plead any defense in its petition and merely stated that the confessed judgment "should be opened to allow [Appellant] to present its defenses." Appellee's brief at 17 quoting Appellant's Petition to Strike or Open Confessed Judgment at 6. In addition, Appellee opines that Appellant did not present any evidence of a meritorious defense and notes that Appellant has not denied that it signed the loan instruments in question or failed to make payments on those loans.

■ Initially, we hold that Appellant's incorporation of its amended complaint from the prior action within its petition to open was sufficient to plead its defenses. *See West Chester Plaza Associates v. Chester Engineers*, 319 Pa.Super. 196, 465 A.2d 1297 (1983); Pa.R.C.P. 1019(g). Further, Appellant delineated its position before the trial court in its memorandum of law in support of that petition. Hence, both the trial court and Appellee were aware of Appellant's stance concerning its alleged defenses of fraud and misrepresentation.

In *Germantown Mfg. Co. v. Rawlinson*, 341 Pa.Super. 42, 491 A.2d 138 (1985), this Court held that fraud and misrepresentation were meritorious defenses that could support the opening of a confessed judgment. However, the mere pleading of those defenses is insufficient. Appellant must also establish that it set forth sufficient evidence in support of those defenses to give rise to a question that would require submission of the case to a jury. In deciding if sufficient evidence has been pled to compel the presentation of the question to a jury, this Court must view all of the evidence in a light most favorable to the petitioner and must accept as true all evidence and proper inferences therefrom that support such a defense. *RAIT Partnership, LP, supra.*

Appellant avers that material false representations were made by and on behalf of Appellee, Appellee knew of those false representations, and Appellant relied upon those misrepresentations in entering into the loan agreements with Appellee. Appellant's brief at 21; *see also* Appellant's Amended Complaint. Appellee counters that verified allegations contained within a complaint are not sufficient evidence to justify submitting an issue to a jury. In leveling this argument, Appellee cites to *Germantown Savings Bank v. Talacki*, 441 Pa.Super. 513, 657 A.2d 1285 (1995). This Court in *Talacki* held that an affidavit alleging that the appellant did not read certain loan documents, signed them at the insistence of her husband, believed an attorney represented her who reviewed the loans, and the appellant was unaware that the documents permitted confession of judgment, was insufficient to warrant the opening of a confessed judgment. *See Talacki, supra* at 1289.

The rationale utilized in *Talacki* was that, as a matter of law, the failure to read a contract, absent fraud, was insufficient to void a contract. The Court further opined that the appellant had not alleged fraud and there was no evidence that the appellant involuntarily signed the document permitting confession of judgment. *Talacki* does not stand for the proposition that a verified complaint cannot present viable evidence that could present questions that may be submitted to a jury.

 Appellee, however, also asserts that the parol evidence rule bars Appellant from introducing evidence of misrepresentation and, therefore, as a matter of law, the misrepresentation defense cannot succeed. Our Supreme Court detailed the parol evidence rule and its applicability in *Yocca v. Pittsburgh Steelers Sports Inc.*, 578 Pa. 479, 854 A.2d 425 (2004):

Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Gianni v. Russell & Co.*, 281 Pa. 320, 126 A. 791, 792 (1924) (citations omitted); *see also Scott v. Bryn Mawr Arms, Inc.*, 454 Pa. 304, 312 A.2d 592, 594 (1973). Therefore, for the parol evidence rule to apply, there must be a writing that represents the "entire contract between the parties." *Gianni*, 126 A. at 792. To determine whether or not a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties...." *Id.* An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution. *See HCB Contractors [v. Liberty Place Hotel Associates*, 539 Pa. 395], 652 A.2d [1278] at 1280 [ (1995) ]; *McGuire v. Schneider*, 368 Pa.Super. 344, 534 A.2d 115, 117 (1987), *aff'd*, 368 Pa.Super. 344, 534 A.2d

115 (1988). [sic] [519 Pa. 439, 548 A.2d 1223].

Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract. *See Bardwell v. Willis Co.*, 375 Pa. 503, 100 A.2d 102, 104 (1953); *McGuire*, 534 A.2d at 117–18. One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake.[FN26] *See HCB Contractors*, 652 A.2d at 1279; *Bardwell*, 100 A.2d at 104. In addition, where a term in the parties' contract is ambiguous, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Estate of Herr*, 400 Pa. 90, 161 A.2d 32, 34 (1960); *see also Waldman v. Shoemaker*, 367 Pa. 587, 80 A.2d 776, 778 (1951).

---

[FN26]. Notably, while parol evidence may be introduced based on a party's claim that there was a fraud in the execution of the contract, *i.e.*, that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.*, that an opposing party made false representations that induced the complaining party to agree to the contract. *See HCB Contractors*, 652 A.2d at 1279; *Bardwell*, 100 A.2d at 104.

*Yocca, supra* at 436–437. Appellee argues that although there are two loan contracts at issue, the two instruments "form an integrated whole, which cannot be varied by parol evidence." Appellee's brief at 20.

Appellant replies that the two loan documents do not represent a final and complete expression of the parties' agreement and do not contain integration clauses. According to Appellant, even when read together, the loan contracts were "not intended to embody the whole of the parties' understanding and the parol evidence rule has no application." Appellant's brief at 23, citing *Int'l Milling Co. v. Hachmeister, Inc.*, 380 Pa. 407, 110 A.2d 186, 191 (1955). We agree.

One of the contracts provides a definition of the loan documents as any document related to the loan signed by the borrower. As Appellant points out, those documents were not identified, listed, incorporated by reference, or made part of the record. While the second loan document does incorporate by reference any other agreements executed in connection with that loan, it is unclear on this record whether these two loan documents formed the full and entire agreement between the parties. Further, as indicated by Appellant, neither loan document contains an integration clause. Since the two writings together do not form the entire contract, the parol evidence rule has no application. Thus, viewing the amended complaint from the prior pending action in a light most favorable to Appellant, and taking the allegations contained therein as true, as we must, we find that Appellant provided sufficient evidence to raise a jury question.

 Although we have already determined that the confession of judgment should be opened and the proceeding held in abeyance, we write further to address Appellant's second claim regarding striking the judgment. Appellant contends that the trial court should have stricken the confessed judgment because Appellee relied on two distinct, materially disparate instruments but includes only a single itemization with no allocation of the

amount due between the distinct instruments.

Where a proceeding to confess judgment is instituted by complaint, the complaint and confession of judgment clause must be read together to determine whether there are defects on the face of the record. *Parliament Indus. Inc. v. William H. Vaughan & Co., Inc.*, 501 Pa. 1, 459 A.2d 720 (1983). Furthermore, the determination of the validity of a judgment entered by confession rests upon a strict construction of the language of the warrant of attorney, and any doubt as to validity must be resolved against the party entering the judgment. *Scott Factors Inc. v. Hartley*, 425 Pa. 290, 228 A.2d 887 (1967); *Continental Bank v. Tuteur*, 303 Pa.Super. 489, 450 A.2d 32 (1982). "Because a warrant of attorney authorizing the confession of judgment can be an oppressive weapon, entry of a valid judgment by confession can only be accomplished if such entry is made in rigid adherence to the provisions of the warrant of attorney, which must be fully complied with; otherwise, such judgment will be stricken." *Scott Factors*, 425 Pa. at 291, 228 A.2d at 888.

*Crum v. F.L. Shaffer Co., supra* at 986. "[W]hen a complaint and confession of judgment are substantially in the form required by our rules of civil procedure, our court has overlooked any minor procedural defects or irregularities in the proceeding that are apparent in the record." *Id.* at 988 (citation omitted).

Appellant submits that a complaint for confession of judgment on two distinct agreements which contains one itemization that does not distinguish between the contributions of the two instruments is inadequate. Alternatively, Appellant posits that the itemization is insufficient without regard to the fact that there are two documents at issue. According to Appellant, because the terms of the loan agreements differ, a single line indicating the amounts owed relative to the principal, interest, late fees, and attorney fees renders the itemization "unintelligible." *See* Appellant's brief at 17–18.

Appellee responds that its complaint "clearly specifies the amount of principal, interest, late charges and fees which comprise the judgment, as required by Pa. R.C.P. 2959." Appellee's brief at 13. Appellee submits that it was required to set forth in its complaint that a default occurred and the amounts owed, which it did. In addition, Appellee posits that it is common to receive a single confession of judgment based on multiple instruments. Further, Appellee contends that it is not evident from the face of the instruments that the judgment was grossly excessive or included amounts not authorized by those instruments. Finally, Appellee avers that if any defect does exist, it is technical and non-prejudicial in nature.

Having examined the complaint and the confession of judgment clauses contained within the two loan instruments, we conclude that no fatal defect or irregularity appears on the face of the record. The record establishes that each document included a warrant of attorney authorizing confession of judgment. The loan documents substantiate the amounts owed pursuant to the agreements and that attorneys' fees can be collected equal to ten percent of the principal and interest. Unlike Appellant, we find the itemization adequate and intelligible by simply looking to the loan agreements. Therefore, the trial court did not err in refusing to strike the confessed judgment.

In conclusion, we direct the trial court to open the confessed judgment and hold the action in abeyance pending resolution of the prior pending action. We add that it would be proper and perhaps the most

efficient manner of resolving the relevant causes of action for the trial court to order, upon its own motion, consolidation of the relevant matters pursuant to Pa.R.C.P. 213. *See Raw, supra; Virginia Mansions, supra.*

Judgment reversed. Case remanded with instructions. Jurisdiction relinquished.